UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ADVANCED WATER TECHNOLOGIES INC.,  :  Case No. 1:18-cv-05473-VSB
                                   :
             Plaintiff,                   :
                                   :
    -against-                     :
                                   :
AMIAD U.S.A., INC.,                :
                                   :
             Defendant.                   :
                                   :
------------------------------------------------------------- x

# DEFENDANT'S MEMORANDUM OF LAW IN
# SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
T: (212) 541-2000
F: (212) 541-4630

*Attorneys for Defendant*

12183030\2395078

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

PLEADINGS ................................................................................................................................. 3

PROCEDURAL HISTORY.......................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

I.      LEGAL STANDARD.................................................................................................. 6

II.     AWT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ........................... 7

      A.     AWT's Exclusive Distribution Right Was Never Renewed for a Year.................. 8

      B.     In the Absence of a Renewal, AWT Cannot Assert a Breach of Contract Based on an Unenforceable Agreement to Agree..................................................... 9

      C.     There Is No Dispute that AWT Failed to Pay the Invoiced Amounts .................. 11

III.    THE ACTION SHOULD BE DISMISSED UNDER THE FIRST-FILED RULE.......... 12

      A.     The Plaintiff's Choice of Forum ............................................................................ 14

      B.     The Convenience of the Parties, Witnesses and the Location of Documents....... 14

      C.     The Locus of Operative Facts ................................................................................ 14

      D.     The Availability of Process to Compel the Attendance of Unwilling Witnesses ................................................................................................................ 15

      E.     The Means of the Parties........................................................................................ 15

CONCLUSION............................................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
  860 F.Supp. 128 (S.D.N.Y. 1994) .................................................................................12, 13, 15

*Argent Elec., Inc. v. Cooper Lighting, Inc.*,
  2005 WL 2105591 (S.D.N.Y. Aug. 31, 2005) ........................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................6

*Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*,
  181 A.D.2d 551, 581 N.Y.S.2d 50 (1st Dep't 1992) ...............................................................10

*Employers Ins. of Wausau v. Fox Entm't Group, Inc.*,
  552 F.3d 271 (2d Cir. 2008) ....................................................................................................13

*ESPN, Inc. v. Office of Comm'r of Baseball*,
  76 F.Supp.2d 383 (S.D.N.Y. 1990) .........................................................................................11

*Express Indus. and Terminal Corp. v. N.Y. State Dep't of Transp.*,
  93 N.Y.2d 584 (1999) ...............................................................................................................9

*First City Nat. Bank and Trust Co. v. Simmons*,
  878 F.2d 76 (2d Cir. 1989) ......................................................................................................12

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
  62 F.3d 69 (2d Cir. 1995) ....................................................................................................6, 11

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
  119 F.Supp.2d 433 (S.D.N.Y. 2000) .......................................................................................14

*Jafari v. Wally Finslay Galleries*,
  741 F.Supp. 64 (S.D.N.Y. 1990) .............................................................................................11

*Johnson v. Nextel Commc'ns, Inc.*,
  660 F.3d 131 (2d Cir. 2011) ..................................................................................................7, 8

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
  52 N.Y.2d 105 (1981) ..........................................................................................................9, 10


*Kosower v. Gutowitz*,
 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) ..........................................................................10

*Kramer v. Time Warner, Inc.*,
 937 F.2d 767 (2d Cir. 1991) ......................................................................................................6

*Manufacturers Hanover Trust Co. v. Palmer Corp.*,
 798 F.Supp. 161 (S.D.N.Y. 1992) ...........................................................................................12

*McCarthy v. Dun & Bradstreet Corp.*,
 482 F.3d 184 (2d Cir. 2007) ......................................................................................................6

*Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*,
 804 F.2d 16 (2d Cir. 1986) ......................................................................................................12

*Munno v. Town of Orangetown*,
 391 F.Supp.2d 263 (S.D.N.Y. 2005) .....................................................................................6, 8

*Nas Elecs., Inc. v. Trantech Elecs. PTE Ltd.*,
 262 F.Supp. 2d 134 (S.D.N.Y. 2003) ......................................................................................11

*New York v. Exxon Corp.*,
 932 F.2d 1020 (2d Cir. 1991) ..................................................................................................12

*In re Newbridge Bancorp S'holder Litig.*,
 2016 WL 6885882 (N.C. Super. Nov. 22, 2016) ....................................................................15

*Seawell v. Continental Cas. Co.*,
 84 N.C.App. 277 (Ct. App. 1987) ...........................................................................................13

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
 425 F.3d 119 (2d Cir. 2005) ......................................................................................................6

*Thomas v. Apple-Metro, Inc.*,
 2015 WL 505384 (S.D.N.Y. Feb. 5, 2015) .............................................................................12

12183030\2395078

*Kosower v. Gutowitz*,
 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) ..........................................................................10

*Kramer v. Time Warner, Inc.*,
 937 F.2d 767 (2d Cir. 1991) ......................................................................................................6

*Manufacturers Hanover Trust Co. v. Palmer Corp.*,
 798 F.Supp. 161 (S.D.N.Y. 1992) ...........................................................................................12

*McCarthy v. Dun & Bradstreet Corp.*,
 482 F.3d 184 (2d Cir. 2007) ......................................................................................................6

*Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*,
 804 F.2d 16 (2d Cir. 1986) ......................................................................................................12

*Munno v. Town of Orangetown*,
 391 F.Supp.2d 263 (S.D.N.Y. 2005) .....................................................................................6, 8

*Nas Elecs., Inc. v. Trantech Elecs. PTE Ltd.*,
 262 F.Supp. 2d 134 (S.D.N.Y. 2003) ......................................................................................11

*New York v. Exxon Corp.*,
 932 F.2d 1020 (2d Cir. 1991) ..................................................................................................12

*In re Newbridge Bancorp S'holder Litig.*,
 2016 WL 6885882 (N.C. Super. Nov. 22, 2016) ....................................................................15

*Seawell v. Continental Cas. Co.*,
 84 N.C.App. 277 (Ct. App. 1987) ...........................................................................................13

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
 425 F.3d 119 (2d Cir. 2005) ......................................................................................................6

*Thomas v. Apple-Metro, Inc.*,
 2015 WL 505384 (S.D.N.Y. Feb. 5, 2015) .............................................................................12

12183030\2395078

**PRELIMINARY STATEMENT**

Under a plain reading of the parties' 2005 letter agreement ("2005 Agreement") and plaintiff's admissions in its pleadings, plaintiff Advanced Water Technologies Inc. ("AWT") has failed to state a claim for breach of contract against defendant Amiad U.S.A., Inc. ("Amiad"). AWT's claim rests on the premise that the 2005 Agreement had been automatically renewed for the 2018 fiscal year, pursuant to a "renewal provision," and that Amiad was obligated to allow AWT to serve as exclusive distributor, although AWT failed to pay invoices when due.  Contrary to AWT's contention, the renewal provision does not grant AWT the power to automatically renew the 2005 Agreement where the parties admittedly failed to agree on and, correspondingly, AWT failed to satisfy material terms that would trigger the renewal right.  Nor does the 2005 Agreement require Amiad to permit AWT to serve as its exclusive distributor where AWT admits it failed to pay invoices timely.  Contrary to AWT's claim, Amiad cannot be compelled to continue doing business with AWT "in perpetuity on an annual basis" under the facts pled.

The "renewal provision" in the 2005 Agreement, which AWT relies upon, provides for automatic, yearly renewal of AWT's exclusive distribution rights only under certain circumstances: "AWT must purchase an agreed $ volume from Amiad on an annual basis; if AWT does not do so, Amiad may elect to continue or discontinue the exclusive nature of the distribution agreement."  "The annual increase in sales/quota … will be jointly agreed between Amiad and AWT.  If AWT meets the quota, it has an automatic right of renewal, subject to continued creditworthiness …."

In its Complaint, AWT admits that, after 2005, "Amiad and AWT never jointly agreed to…" the annual increase in sales/quota and never jointly agreed to the sales quota for 2017.  Accordingly, AWT did not purchase in 2017 the "agreed $ volume" and no automatic renewal

right existed for 2018.  Having failed to agree on and correspondingly meet a sales quota for 2017, AWT cannot claim its right to serve as exclusive distributor was renewed for 2018.  The renewal provision's agreement to agree on future sales quotas does not grant AWT the right to unilaterally renew its status as exclusive distributor "in perpetuity," as it claims.  Instead, under a plain reading of the 2005 Agreement, "Amiad may elect to continue or discontinue the exclusive nature of the distribution agreement."  Amiad's termination of the 2005 Agreement and AWT's exclusive distribution right, accordingly, is not a breach of contract, but rather was expressly authorized.

AWT's admitted failure to pay invoices when due also prevents it from claiming that Amiad was obligated to continue allowing AWT to serve as exclusive distributor.  AWT admits that when Amiad terminated AWT's status as exclusive distributor, it was for a "failure to pay an overdue balance of $18,085.27."  Having failed to pay invoices timely – a material breach – Amiad had the right to terminate AWT as exclusive distributor.  AWT's later attempt to partially pay the unpaid invoices cannot transform Amiad's earlier termination into a breach of contract.

Alternatively, if the Court declines to dismiss this action pursuant to Rule 12(b)(6), the Court should exercise its discretion to dismiss this action pursuant to the "first-filed" rule.  Approximately one month before AWT commenced this action, Amiad filed a complaint against AWT in North Carolina state court to determine the rights of the parties under the 2005 Agreement.  The North Carolina action, which was removed to the United States District Court for the Middle District of North Carolina, should be the action to proceed if this Court declines to dismiss under Rule 12(b)(6).

Accordingly, the Court should dismiss AWT's Complaint, with prejudice.

2

## PLEADINGS

AWT pleads that on March 31, 2005, AWT and Amiad executed the 2005 Agreement, pursuant to which Amiad granted AWT the right to serve, in 2005, as the exclusive distributor of certain Amiad products within New York City, Nassau County and Suffolk County.  (Weissman Decl., Ex. A, Compl. ¶ 10.[1])  AWT annexed a copy of the 2005 Agreement to the Complaint and pleads that it is "incorporated herein as if fully stated."  (*Id.*; *see also* Weissman Decl., Ex. A, Compl. Ex. A, 2005 Agreement.)

In its Complaint, AWT alleges that "[t]he parties agreed that renewal of the [2005 Agreement] would be automatic on an annual basis if AWT purchased an agreed dollar volume from Amiad during the previous year" ("Sales Quota").  (Weissman Decl., Ex. A, Compl. ¶ 11.) In that regard, the 2005 Agreement provides as follows:

> Quota: AWT must purchase an agreed $ volume from Amiad on an annual basis; if AWT does not do so, Amiad may elect to continue or discontinue the exclusive nature of the distribution agreement.  The annual increase in sales/quota should be a reasonable number and will be jointly agreed between Amiad and AWT.  If AWT meets the quota, it has an automatic right to renewal, subject to continued creditworthiness, continuing and responsible efforts to sell Amiad filtration, and responsible maintenance of equipment it has sold.  The sales quota / target for NET purchases of Amiad products is US $55,000 in FY 2005 (i.e. January 1 – December 31, 2005).

(Weissman Decl., Ex. A, Compl. Ex. A, at 1.)

As set forth in the 2005 Agreement and as AWT pleads, the Sales Quota for fiscal year 2005 was agreed to be $55,000: "The sales quota / target for NET purchases of Amiad products is US $55,000 in FY 2005 (i.e. January 1 – December 31, 2005)."  (*Id.*)  After 2005, AWT admits that "Amiad and AWT never jointly agreed…" on a Sales Quota for any subsequent years

---

[1]  A true and correct copy of the Complaint in this action ("Compl.") is attached to the Declaration of Noah M. Weissman ("Weissman Decl.") as Exhibit A.

3

or an "annual increase in sales/quota." (*See* Weissman Decl., Ex. A, Compl. ¶ 15 and Compl. Ex. A, at 1.)

Nevertheless, AWT continued to purchase and distribute Amiad product, submitting purchase orders to Amiad and receiving invoices from Amiad. (*See* Weissman Decl., Compl. ¶ 16.) Each of Amiad's invoices to AWT explicitly state that Payment Terms are "Inv+30 Days," requiring AWT to make payment within 30 days of the invoice date. (Weissman Decl., Ex. B, North Carolina Complaint, Ex. 2.) AWT admits that, in 2017, it failed to make payments due under the invoices and only after receiving Amiad's termination notice did it attempt to make a partial payment towards the amount demanded by Amiad. (Weissman Decl., Ex. A, Compl. ¶¶ 19-22.)

By letter dated April 13, 2018, Amiad provided AWT with notice that Amiad was immediately terminating AWT as exclusive distributor under the 2005 Agreement. (Weissman Decl., Ex. A, Compl. ¶ 19.) Amiad stated, in the letter, that "AWT has repeatedly failed to pay a long overdue invoice for Amiad equipment in the amount of approximately $18,085.27. Amiad has sent AWT several demands for payment over the last few months, each demand marked 'high importance.'" (Weissman Decl., Ex. B, North Carolina Complaint, Ex. 4, April 13, 2018 letter.) Amiad further admonished AWT that "[t]imely payment of invoices is one of AWT's most fundamental obligation [sic] under the Contract." (*Id*.) By letter dated May 1, 2018, AWT's counsel countered that it was rejecting Amiad's termination, claiming that there was no "unilateral right to terminate if invoices are not paid in full by any date certain." (Weissman Decl., Ex. A, Compl. ¶ 20 and Ex. B, North Carolina Complaint, Ex. 5.)

In its Complaint, AWT asserts that the 2005 Agreement and its right to serve as exclusive distributor should be "continuing in perpetuity on an annual basis as provided for in the

4

Contract." (Weissman Decl., Ex. A, Compl. ¶ 26.) In that regard, AWT pleads that even though the parties never agreed on "the annual increase in sales/quota" or on the Sales Quota for any year after 2005, the 2005 Agreement automatically renewed and AWT has the right to serve as exclusive distributor as long as it continued to meet the 2005 Sales Quota. (*Id*. at ¶¶ 15-18.) Based on this incorrect interpretation of the 2005 Agreement, AWT seeks lost profit damages on the sale of Amiad products "from April 13, 2018 and continuing in perpetuity…." (*Id.* at ¶ 27.)

## PROCEDURAL HISTORY

On May 17, 2018, Amiad filed a complaint against AWT in the General Court of Justice of North Carolina, Superior Court Division, Guilford County. (*See* Weissman Decl., Ex. B, North Carolina Complaint.) The North Carolina Complaint requests $18,085.27 for money owed pursuant to the unpaid invoices Amiad sent to AWT and seeks a declaratory judgment that Amiad properly cancelled the Agreement ("NC Litigation"). (*See id.*) AWT received a copy of the Complaint in the NC Litigation on May 21, 2018. (Weissman Decl., Ex. C, ¶ 2.)

On June 18, 2018, AWT sought to have these issues raised in the NC Litigation adjudicated in a different forum, by commencing the instant action against Amiad ("NY Litigation"). (*See* Weissman Decl. Ex. A, Compl.) In the NY Litigation, AWT alleges that Amiad's termination of the 2005 Agreement was not proper and constituted a breach of contract. (*See id.*) The NY Litigation and the NC Litigation concern the same parties, same operative events, and the same agreement. On June 19, 2018, a day after commencing the NY Litigation, AWT removed the NC Litigation from state court to the United States District Court for the Middle District of North Carolina. (*See* Weissman Decl., Ex. C.)

Following removal of the NC Litigation to federal court, on July 17, 2018, AWT filed a motion to dismiss the NC Litigation based on lack of personal jurisdiction or, in the alternative,

5

to transfer the action to this Court.  (Weissman Decl., ¶ 6.)  In support of its motion to dismiss, AWT submitted the Declaration of Matthias Kriesberg, the President of AWT, executed July 17, 2018.  (*See* Weissman Aff., Ex. D.)  In his Declaration, Mr. Kriesberg admits that:

> The parties never agreed to increase the sales quota or otherwise amend the Agreement.  They have never executed any other agreements.

(*Id.*, Kriesberg Declaration, ¶¶ 38-39.)

Amiad filed papers in opposition to AWT's motion to dismiss.  (Weissman Decl., ¶ 6.)  AWT's reply papers on the motion to dismiss are due September 28, 2018.  (*Id.*)

## ARGUMENT

### I.  LEGAL STANDARD

When considering motions to dismiss under Rule 12(b)(6), the Court should determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, "a formulaic recitation of the elements of a cause of action will not do…." *Twombly*, 550 U.S. at 555; *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  With respect to contractual construction, the court is <u>not</u> obliged to accept the allegations of the complaint, but should consider the plain meaning and language of the contract. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

In evaluating a Rule 12(b)(6) motion, the Court may consider any written instrument attached to the complaint as an exhibit or any documents incorporated in the complaint by

6

reference. *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995). The court may also "take judicial notice of public records and of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Munno v. Town of Orangetown*, 391 F.Supp.2d 263, 268 (S.D.N.Y. 2005) (taking judicial notice of affidavits and pleadings filed by plaintiff in state court action, which contained plaintiff's admissions contradicting plaintiff's allegations in its complaint); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of publicly filed documents and noting that "it is highly impractical and inconsistent with Federal Rule of Evidence 201 to preclude a district court from considering such documents when faced with a motion to dismiss …").

Under this standard, the Court should dismiss AWT's Complaint.

## II. AWT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

In its Complaint, AWT incorrectly contends that the parties' 2005 Agreement automatically was renewed in perpetuity, precluding Amiad from terminating it, and that AWT's failure to pay invoices timely did not permit Amiad to terminate AWT's exclusive distribution rights. Yet, a plain reading of the 2005 Agreement and consideration of the AWT's allegations and admissions inevitably leads to the conclusion that Amiad did not breach the 2005 Agreement when it sent a termination notice. The 2005 Agreement had not been automatically renewed for the year of 2018 so terminating it mid-year was not a breach. Furthermore, it is well settled that a party may terminate a contract for non-payment. Accordingly, AWT cannot establish a breach of the 2005 Agreement or that it is entitled to damages "in perpetuity."

Under New York law, a plaintiff bringing a breach of contract claim must establish four elements: (1) the existence of a contract, (2) plaintiff's performance under the contract, (3) breach by the defendant, and (4) resulting damages. *Johnson v. Nextel Commc'ns, Inc.*, 660

7

F.3d 131, 142 (2d Cir. 2011).  As discussed below, AWT fails to allege facts sufficient to establish each of these elements.

### A. AWT's Exclusive Distribution Right Was Never Renewed for a Year

Under the 2005 Agreement, AWT was granted the exclusive right to distribute certain Amiad products within New York City, Nassau County, and Suffolk County, for the period of January 1, 2005 through December 31, 2005.  (Weissman Decl., Ex. A, Compl., Ex. A, at 1.)  The 2005 Agreement contained a renewal provision, with an agreed Sales Quota only for 2005, and provided that "renewal of this agreement will be automatic on an annual basis…" provided AWT meets the prior year's Sales Quota.  (*Id.*)

The 2005 Agreement's renewal provision constitutes a classic agreement to agree for the Sales Quota for future years: "Renewal of [the 2005] agreement will be automatic on an annual basis subject to the following: … AWT must purchase the agreed volume from Amiad on an annual basis; if AWT does not do so, Amiad may elect to continue or discontinue the exclusive nature of the distribution Agreement."  (*Id.*)  Rather than memorialize any agreement on a formula for annual increase of the Sales Quota or establish specific Sales Quotas for subsequent years, the 2005 Agreement merely provides that "the annual increase in sales/quota should be a reasonable number and will be jointly agreed between Amiad and AWT.  If AWT meets the quota, it has an automatic right of renewal …."  (*Id.*)

In its pleadings in this case and filings in the North Carolina Litigation, AWT admits that "[t]he parties never agreed to increase the sales quota or otherwise amend the Agreement." (Weissman Decl., Ex. D, Kriesberg Declaration, ¶¶ 38-39; *see also* Weissman Decl., Ex. A, Compl. ¶ 15.[2])  AWT, accordingly, acknowledges that the parties never jointly agreed to the

---

[2] On this motion to dismiss, it is appropriate for the court to take judicial notice of the statements made by AWT's President, Mr. Kriesberg, in the NC Litigation, as those statements

8

"annual increase in sales/quota" or established a Sales Quota for 2017.  AWT instead contends that it need only satisfy the Sales Quota for fiscal year 2005 to obtain an automatic renewal right "in perpetuity."  AWT's contention and the corresponding breach of contract claim do not withstand scrutiny.

Under the plain language of the 2005 Agreement, the conditions that provided for automatic renewal for the 2018 fiscal year were not met.  A Sales Quota for 2017 was "not jointly agreed between Amiad and AWT;" AWT correspondingly could not and did not "purchase an agreed $ volume from Amiad on an annual basis" for 2017; AWT's right to serve throughout 2018 as exclusive distributor was not automatically renewed; and, in that event, "Amiad may elect to continue or discontinue the exclusive nature of the distribution agreement."

Simply put, Amiad cannot be liable for breach of contract for doing that which the Agreement expressly permits or, at a minimum, what it does not bar.

### B.    In the Absence of a Renewal, AWT Cannot Assert a Breach of Contract Based on an Unenforceable Agreement to Agree

AWT's claim for breach of contract also should be dismissed because the renewal provision is an unenforceable agreement to agree.  "[I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."  *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109-10 (1981) (reversing enforcement of renewal lease where agreement recited that the lease would be renewed for "annual rentals to be agreed upon").  In that regard, an agreement in which there is no way to tell from the face of the document how to parties intended to establish the missing terms, is unenforceable.  *See Express Indus. and Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 590 (1999).  "[B]efore the power of law can be invoked

directly contradict AWT's assertion of a breach of contract claim in this action.  *See Munno*, 391 F.Supp.2d at 268.

9

to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained…Thus, definiteness as to material matters is of the very essence in contract law. Impenetrable vagueness and uncertainty will not do." *Martin Delicatessen*, 52 N.Y. at 109. "This requirement assures that the judiciary can give teeth to the parties' mutually agreed terms and conditions when one party seeks to uphold them against the other." *Express Indus..*, 93 N.Y.2d at 589.

Where, as here, the Sales Quota, which is a material term of the 2005 Agreement, is required to be negotiated to permit a renewal, and where there is no dispute that an agreement was never reached and no formula was provided for determining the Sales Quota or increase in Sales Quota for any given year, such indefiniteness precludes a holding that AWT had an enforceable contract right to serve as Amiad's exclusive distributor for all of 2018. *See Martin, Delicatessen*, 52 N.Y.2d at 109-10 (where contract provided that renewal depended on "annual rentals to be agreed upon" and no formula was provided, there was no renewal right); *see also Argent Elec., Inc. v. Cooper Lighting, Inc.*, 2005 WL 2105591, at *5 (S.D.N.Y. Aug. 31, 2005) (finding that an agreement failed for indefiniteness where "there are no objective means by which the commission rate [at issue] could be rendered 'reasonably certain'"); *Kosower v. Gutowitz*, 2001 WL 1488440, at *5 (S.D.N.Y. Nov. 21, 2001) (unenforceable agreement to agree created where there "was never a meeting of the minds with respect to the plaintiff's share of the partnership profits or how that share could be objectively calculated"); *Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 181 A.D.2d 551, 551-52, 581 N.Y.S.2d 50, 51 (1st Dep't 1992) ("as no objective method or formula was provided for determining a commission, the exclusive sales contract was merely an agreement to agree and was unenforceable").

10

AWT cannot state a breach of contract claim based on a contract renewal right that is simply an agreement to agree.

### C. There Is No Dispute that AWT Failed to Pay the Invoiced Amounts

AWT cannot state a claim for breach of contract based on an assertion that Amiad improperly terminated its exclusive distribution right where AWT failed to make timely payment. AWT pleads that Amiad sent a termination notice, stating that "AWT has repeatedly failed to pay a long overdue invoice for Amiad equipment in the amount of approximately $18,085.27." (Weissman Decl., Ex. A, Compl. ¶ 19, Weissman Decl., Ex. B, North Carolina Complaint, Ex. 4, April 13, 2018 letter.) Amiad's letter stressed that it "sent AWT several demands for payment over the last few months, each demand marked 'high importance'…. Timely payment of invoices is one of AWT's most fundamental obligation [sic] under the Contract." (*Id.*)

The invoices sent by Amiad to AWT provide that payment is to be made within 30 days of the date of the invoice.[3] (Weissman Decl., Ex. B, North Carolina Complaint, Ex. 2.) AWT admits that it failed to pay invoiced amounts due and that at least $17,399.63 remained unpaid when Amiad sent its termination notice. (*See* Weissman Decl., Ex. A, Compl. ¶¶ 21-23; Weissman Decl., Ex. B, North Carolina Complaint, Ex. 5, May 1, 2008 letter.) AWT's failure to pay the invoices is a material breach of the parties' agreement. *See Jafari v. Wally Finslay Galleries*, 741 F.Supp. 64, 67 (S.D.N.Y. 1990). Under New York law, when one party has committed a material breach of the contract, the non-breaching party is discharged from performing any further obligations under the contract, and the non-breaching party may elect to terminate the contract and sue for damages. *Nas Elecs., Inc. v. Trantech Elecs. PTE Ltd.*, 262

---

[3] The invoices and purchases orders are incorporated by reference on this motion to dismiss and together with the agreement form the basis of the parties' contractual relationship. *Int'l Audiotext Network*, 62 F.3d at 72.

11

F.Supp. 2d 134, 145 (S.D.N.Y. 2003).  Faced with AWT's failure to pay amounts due on invoices, Amiad was entitled to elect to continue the contract or terminate the contract and sue to recover the amounts due from AWT.  *See ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F.Supp.2d 383 (S.D.N.Y. 1990).

Here, Amiad exercised its right to terminate the contract and sue to recover damages in the NC Litigation.  Contrary to AWT's claim, Amiad cannot be compelled to do business with AWT in perpetuity and cannot be held to have breached the 2005 Agreement where AWT admits it failed to pay amounts due to Amiad.  For this reason as well, AWT's breach of contract claim fails.

## III.   THE ACTION SHOULD BE DISMISSED UNDER THE FIRST-FILED RULE

While the Court should dismiss the action for failure to state a claim, if it does not do so, it should dismiss it to allow the claims to be addressed in the NC Litigation.  It is well-settled that "'[w]here there are two competing lawsuits, the first should have priority, absent the showing of balance of convenience … or … special circumstances … giving priority to the second.'"  *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir. 1986)).  Generally, there is a strong presumption in favor of the forum of the first-filed suit.  *See New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991).  Pursuant to this rule, "a district court has broad discretion to dismiss a lawsuit that is duplicative of a prior action."  *Thomas v. Apple-Metro, Inc.*, 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015).

"The first filed rule was developed to serve the purposes of promoting efficiency and should not be disregarded lightly."  *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 132 (S.D.N.Y. 1994).  "Additionally, plaintiff bears the burden of demonstrating any special circumstances justifying an exception to the rule."  *Id.*  In circumstances where the

case was commenced in state court and removed to federal court, "the state court filing date is the relevant benchmark." *Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 166 (S.D.N.Y. 1992).[4]

Here, an application of the "first to file rule" supports the dismissal of this action in favor of the NC Litigation. The NC Litigation was commenced by filing a summons and complaint in North Carolina state court on May 17, 2018. (*See* Weissman Decl., Ex. B, North Carolina Complaint.) AWT commenced this action approximately one month later, on June 18, 2018. (Weissman Decl., Ex. A, Compl.) The NC Litigation and this NY Litigation involve the same parties, the same agreement and the same issue – whether the agreement was properly terminated.

There are no special circumstances warranting a departure from the first-filed rule. Generally, a "special circumstances" exception to the first-filed rule exists where "forum shopping alone motivated the choice of situs for the first suit." *800-Flowers*, 860 F.Supp. at 132. There is no evidence that Amiad chose North Carolina as a forum for this suit based on forum shopping. In commencing the NC Litigation, Amiad gained no strategic advantage as the laws of both North Carolina and New York are favorable to Amiad. Indeed, the case law in New York and North Carolina both hold that an agreement to agree is unenforceable. *Seawell v. Continental Cas. Co.*, 84 N.C.App. 277, 281 (Ct. App. 1987).

In applying the "balance of convenience" exception, the court looks at the same factors as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a), which are: (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the

---

[4] AWT strategically removed the NC Litigation to federal court one day after commencing this action, with goal to make it appear as if this action was first filed. However, this Court has found that for purposes of application of the first-filed rule, the date of filing of the original state court action is relevant, not the date of removal of the state court action.

13

location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 552 F.3d 271, 275 (2d Cir. 2008).

### A. The Plaintiff's Choice of Forum

When evaluating the priority of an action under the first-filed rule, "there is a strong presumption in favor of the forum chosen by the original plaintiff…" *800-Flowers*, 860 F.Supp. at 135. Accordingly, the Court should give weight to the forum chosen by Amiad, the original plaintiff, which was North Carolina.

### B. The Convenience of the Parties, Witnesses and the Location of Documents

Amiad has its principal place of business in Mooresville, North Carolina. (Declaration of Matthew Miles ("Miles Decl."), ¶ 3.) Amiad, its evidence and its witnesses, who may eventually be called to testify, are located in North Carolina. Although AWT asserts that it has its principal place of business in New York, hotel costs for traveling witnesses would be higher in New York.

### C. The Locus of Operative Facts

AWT and Amiad's business was conducted in North Carolina. (Miles Decl., ¶¶ 5-6.) From July 2017 to March 2018, Amiad sold AWT the products listed on purchase orders sent by AWT to Amiad. (*Id.* at ¶ 7.) AWT routinely sent its purchase orders to Amiad in North Carolina via email. (*Id.* at ¶ 6.) The invoices were sent to AWT from Amiad in North Carolina and AWT sent products from North Carolina to AWT. (*Id.* at ¶ 5.) Amiad failed to timely pay the invoices for July 2017 through March 2018 purchase orders. (*Id.* at ¶ 8.) As a result of AWT's failure to pay the invoices, Amiad sent a number of emails to AWT, from its offices in North Carolina, informing it of the outstanding balance and demanding payment. (*Id.*) Thereafter, Amiad sent a letter, from its offices in North Carolina, to AWT, informing AWT that Amiad was terminating

14

the Agreement. (*Id.* at ¶ 9, Weissman Decl., Ex. B, North Carolina Complaint, Ex. 4.) Thus, the locus of the operative facts appears to be North Carolina.

### D. The Availability of Process to Compel the Attendance of Unwilling Witnesses

The court's ability to compel the attendance of unwilling witnesses is a neutral factor. "This factor is generally relevant only with respect to third-party witnesses, because employee witnesses are subject to compulsory process…." *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d 433, 438 (S.D.N.Y. 2000). Since no pleading identifies nonparty witnesses, this factor likely is neutral.

### E. The Means of the Parties

Means of the parties is not as significant when comparing corporations, as it would be if the litigation were between an individual and a corporation. *800-Flowers*, 860 F.Supp. at 135. Still, it cannot be disputed that this case will be less expensive for both parties if litigated in North Carolina. The North Carolina Business Court recently noted the difference between hourly rates in North Carolina and New York City for complex business cases, finding New York rates significantly higher. *See In re Newbridge Bancorp S'holder Litig.,* 2016 WL 6885882 (N.C. Super. Nov. 22, 2016).

For all of these reasons, the Court should exercise its discretion to dismiss this action under the "first-filed" rule.

15

## **CONCLUSION**

For all of the foregoing reasons, AWT's Complaint should be dismissed in its entirety, with prejudice, and the Court should grant Amiad such other, further and different relief as it deems just and proper.

Dated: New York, New York
       September 28, 2018

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By:    /s/ Noah M. Weissman
Noah M. Weissman
Courtney J. Peterson
1290 Avenue of the Americas
New York, New York 10104
T: (212) 541-2000
F: (212) 541-4630
Email: nmweissman@bclplaw.com
       courtney.peterson@bclplaw.com

*Attorneys for Defendant*