UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ADVANCED WATER TECHNOLOGIES INC.,   Case No. :1:18-cv-05473-VSB

      Plaintiff,

  -against-

AMIAD U.S.A., INC.,

      Defendant.
-------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

RONALD FRANCIS, ESQ.
Attorney for Plaintiff
30 Broad Street, 37th Floor
New York, NY 10004
(212) 279-6536
rf@ronaldfrancislaw.com

## **TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I

THE COMPLAINT SUFFICIENTLY ALLEGES
A CAUSE OF ACTION FOR BREACH OF CONTRACT

A.      Legal Standard Under Fed. R. Civ. P. 8 & 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . 5

B.      The allegations in the complaint for breach of contract are sufficiently pleaded. . 6

    (1)  The Contract was automatically renewed for 2018 . . . . . . . . . . . . . . . . . . . . 6

    (2)  The Court should not consider the extrinsic evidence submitted by defendant,
         but if it does, then defendant's motion must be converted to one for summary
         judgment and plaintiff must be permitted to take discovery. . . . . . . . . . . . . 8

    (3)  AWT's alleged non-payment of certain invoices does not serve as a basis
         for dismissal of the Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

POINT II

THE COMPLAINT SHOULD NOT BE DISMISSED
PURSUANT TO THE FIRST-FILED RULE

A. This Court should defer to the District Court for the Middle District of North Carolina
   on the issue of proper venue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B. Venue of this action is proper in the Southern District of New York. . . . . . . . . . . . 13

    (1)  Special circumstances dictate that venue is proper in the Southern District of
         New York. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    (2)  The balance of convenience weighs in favor of venue in the Southern District
         of New York. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

        (A)  The Plaintiff's Choice of Forum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

        (B)  The Convenience of Witnesses and Location of Documents . . . . . . 18

        (C)  The Locus of Operative Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        (D)  The Relative Means of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**Cases**

*800–Flowers, Inc. v. Intercontinental Florest, Inc.*,
    860 F.Supp. 128, 131 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Berisford Capital Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*,
    677 F.Supp. 220, 222 (S.D.N.Y.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brodeur v. City of New York*, 2002 WL 424688, at *2 (S.D.N.Y. Mar. 18, 2002) . . . . . . . . . . 10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 202-03 (2d Cir. 2002) . . . . . . . . . . . . . . . . . 9, 10

*Chicago Ins. Co. v. Holzer*,
    00 Civ. 1062, 2000 WL 777907 at *1, 4 (S.D.N.Y. June 16, 2000) . . . . . . . . . . . . . . . 15

*Citigroup, Inc. v. City Holding Company*, 97 F.Supp.2d 549, 555-556 (S.D.N.Y. 2000) . . . 15, 16

*Clarendon National Ins. Co. v. Pascual* 2000 WL 270862 (S.D.N.Y. 2000) . . . . . . . . . . . . . . 13

*CortecIndus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . 9

*Donaldson, Lufkin & Jenrette, Inc. v. L.A. Cty.*, 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982) . . . .13

*Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) . . . . 14, 15, 17

*Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Federal Ins. Co. v. May Dep't Stores Co.*, 808 F.Supp. 347, 350 (S.D.N.Y.1992) . . . . . . . . . . 16

*Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154–55 (2d Cir. 2006) . . . 11

*Gomez v. City of New York*, 2017 WL 1034690, at *3 (E.D.N.Y. Mar. 16, 2017) . . . . . . . . .10, 11

*Guzman-Reina v. ABCO Maint., Inc.*, 2018 WL 264102, at *2 (E.D.N.Y. Jan. 2, 2018) . . . . . . 9

*Ivy–Mar*, 1993 (WL 535166 at *2, 1993 U.S.Dist. LEXIS 17965 at *6) . . . . . . . . . . . . . . . . . . 14

*J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 491 (S.D.N.Y.1995) . . . . . . . . . . . . 16

*Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 392 (S.D.N.Y. 2014) . . . . . . . . . . 14

*Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161 (S.D.N.Y. 1992). . . . . . 13

*McGuire v. City of New York*, 2013 WL 325359, at *5 (E.D.N.Y. Jan. 28, 2013) . . . . . . . . . . 10

*Mondo, Inc. v. Spitz,* 97 Civ. 4822, 1998 WL 17744 at *1–2 (S.D.N.Y. Jan. 16, 1998) . . . . . . . 15

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
    723 F.3d 192, 202 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*National Patent Dev. Corp. v. American Hosp. Supply Corp.*,
    616 F.Supp. 114, 118 (S.D.N.Y.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*National Union Fire Ins. Co. v. International Wire Group, Inc.*,
    02 Civ. 10338, 2003 WL 21277114 at *6 (S.D.N.Y. June 2, 2003) . . . . . . . . . . . . . . . 15

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) . . . . . . 15

*Med-Plus, Inc. v. Am. Cas. Co. of Reading, P.A.*,
    2017 WL 3393824, at *5 (E.D.N.Y. Aug. 4, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ontel Prods. V. Project Strategy Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995) . . . . . . . . . . . . . 15

*Plains Marketing L.P. v. Kuhn*, 2011 WL 4916687, at *3 (E.D.N.Y. Oct. 17, 2011) . . . . . . . . 10

*Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC*, 2018 WL 357304 (S.D.N.Y. 2018) . . 13

*Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . 14

*S–Fer International, Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211, 216 (S.D.N.Y. 1995) . . 17

*Sahu v. Union Carbide Corp.*, 548 F.3d 59, 63 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 510 (S.D.N.Y. 2004) . . . . . . 13

*Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012) . . . . . . . . 9

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Toy Biz, Inc. v. Centuri Corp.*, 990 F.Supp. 328, 332 (S.D.N.Y.1998) . . . . . . . . . . . . . . . . . . . 16

*Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) . . . . . . . . . . . 17

*William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969) . . . . . 17

**<u>Statutes</u>**

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rule 8(a)(2) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 5, 10

Rule 56 of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule 12(d) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ADVANCED WATER TECHNOLOGIES INC.,                Case No. :1:18-cv-05473-VSB

                                   Plaintiff,

        -against-

AMIAD U.S.A., INC.,

                                   Defendant.
-------------------------------------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

### Preliminary Statement

Plaintiff Advanced Water Technologies, Inc. ("AWT") submits this memorandum of law in opposition to the motion by defendant Amiad U.S.A., Inc ("Amiad") for an order dismissing the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, dismissing this action under the "first-filed" rule.

Defendant's motion to dismiss should be denied as the complaint sufficiently pleads a cause of action for breach of contract.  Furthermore, defendant's arguments that the complaint should be dismissed because the contract between the parties was not subject to automatic renewal, or that AWT breached the contract by not adhering to the terms contained in Amiad's invoices, are either based upon incorrect interpretations of the contract and non-contract documents, or concern issues of fact to be determined, not on a motion to dismiss, but at trial.

Lastly, defendant's request that the complaint be dismissed based upon the first-filed rule should also be denied and the Court should defer to the District Court for the Middle District of North Carolina for its determination of proper venue.   If this Court decides this issue, then special

1

circumstances as well as a balancing of the convenience of the parties, dictate that the proper venue of this dispute is the Southern District of New York.

## Statement of Facts

Plaintiff AWT is in the business of distributing, installing and servicing domestic water filtration systems and products. On March 31, 2005, AWT and Amiad entered into a contract (the "Contract") whereby Amiad assigned the distribution of its screen filtration products exclusively to AWT for wholesale and retail sales within the five boroughs of New York City, as well as Nassau and Suffolk counties.   Kriesberg Decl. ¶ 3.

The parties agreed that renewal of the Contract would be automatic on an annual basis if AWT purchased an agreed dollar volume from Amiad during the previous year (the "Sales Quota").   The automatic renewal of the Contract was also subject to AWT's continued creditworthiness, continuing and responsible efforts to sell Amiad filtration, and responsible maintenance of the equipment it has sold.   Kriesberg Decl. ¶ 4.

The Sales Quota for net purchases by AWT of Amiad products for the initial fiscal year, defined in the Contract as January 1 – December 2005, was $55,000.   The Contract provides that any annual increase in the Sales Quota "should be a reasonable number and will be jointly agreed between Amiad and AWT."   Amiad and AWT never jointly agreed to increase the $55,000 annual Sales Quota and so the Sales Quota remained the same for every year of the Contract (2005-2018).   Kriesberg Decl. ¶¶ 5-7.

From 2005 through April 2018, AWT purchased products from Amiad for AWT's customers in the agreed upon territory totaling approximately Four Million Dollars ($4,000,000). During that time period, AWT never failed to meet the $55,000 annual Sales Quota.   Kriesberg

2

Decl. ¶ 13.

For the fiscal year January 1 - December 31, 2017, AWT's sales totaled approximately $207,000, and thus met the annual Sales Quota in place of $55,000.   Kriesberg Decl. ¶ 14.

As of April 13, 2018, AWT had already met the required annual Sales Quota for the Contract to automatically renew for 2019, and had fulfilled all of its obligations and responsibilities under the Contract for each and every year from 2005 through April 13, 2018. Kriesberg Decl. ¶ 15.

For eleven (11) years, spanning from the Contract's inception in 2005 through 2015, Amiad continued doing business with AWT without objection that the Contract automatically renewed and that the $55,000 Sales Quota remained the same every year. Kriesberg Decl. ¶ 12.

In 2016 and 2017, by letters dated June 28, 2016 and March 14, 2017 respectively, and in person on November 27, 2017 and email dated December 31, 2017, Amiad attempted to change the terms of the Contract in such a way to allow it to <u>unilaterally</u> increase the Sales Quota.   AWT rejected Amiad's unilateral changes of the Sales Quota and Amiad did not pursue termination of the Contract on that basis.    Kriesberg Decl. ¶¶ 12, 20-27, 32.

By letter dated April 13, 2018, Amiad provided notice to AWT that it "<u>immediately terminates</u>" the Contract – not based upon AWT's failure to meet a Sales Quota – but based upon AWT's alleged failure to pay an overdue balance of $18,085.27.   Kriesberg Decl. ¶ 16.

The invoices (which added up, constitute the balance Amiad claims is due) as well as the terms contained therein, were unilaterally created by Amiad, and never negotiated, agreed to, complied with, or enforced by the parties throughout their entire thirteen year relationship.   These same invoices serve as the basis for defendant's purported termination of the Contract.   Kriesberg

3

Decl. ¶ 27.

Since 2005, Amiad held balances due for products purchased by AWT in much larger amounts and for much longer periods of time than the $18,085.27 balance Amiad alleges is owed. On average, AWT's running balance was approximately $100,000 per month and at one point was as high as $276,000.   The $18,000 balance upon which Amiad purported to terminate the Contract was near the lowest balance that that AWT owed in the preceding three years.   Indeed, AWT's payments and balances owed to Amiad in 2018 were consistent with the parties' course of dealing over the past 13 years and consistent with the norms in the construction industry.   There was usually a lag time of 30-90 days for AWT to be paid from the customers of defendant's products. Because defendant recognized and understood the payment lag time from the end-use customers it allowed AWT to carry the aforementioned balances. Kriesberg Decl. ¶ 31.

By letter dated May 1, 2018 from AWT's attorney, AWT promptly rejected Amiad's purported April 13, 2018 termination.   Additionally, along with AWT's rejection of Amiad's purported termination of the Contract, AWT remitted payment to Amiad in the amount of $17,399.63, representing what AWT believed to be the outstanding balance owed to Amiad at that time.   Kriesberg Decl. ¶ 17.

In this May 1, 2018 letter, AWT's counsel also addressed other contentious issues between the parties, and specifically and explicitly threatened that "if Amiad does not take steps to investigate and take action to correct these problems in a timely manner, AWT will have no choice but to pursue legal action."   *See* Exhibit 5 attached to Defendant's Exhibit B.

Amiad refused to cash AWT's check, maintaining that the balance owed to it is $18,085.27 (a mere difference of $685.64), and that it properly terminated the Contract. AWT attempted to

4

reconcile the outstanding balance with Amiad and continue working under the Contract, but Amiad refused to honor the Contract.   Kriesberg Decl. ¶ 18.

On May 17, 2018 – just sixteen (16) days after AWT's threat of litigation – defendant commenced an action in the Superior Court of Guilford County, North Carolina, for a declaratory judgment that it properly terminated the Contract between the parties, as well as for breach of contract.

On June 18, 2018, AWT commenced this action seeking damages that it has incurred and continues to incur as a result of Amiad's improper termination of the Contract.

On June 19, 2018, AWT removed Amiad's North Carolina state court action to the United States District Court for the Middle District of North Carolina.

Based upon the lack of personal jurisdiction and improper venue, AWT has moved in the Middle District of North Carolina for dismissal of that action, or in the alternative, for the action to be transferred to the Southern District of New York.

<u>**Argument**</u>

**POINT I**

**THE COMPLAINT SUFFICIENTLY ALLEGES**
<u>**A CAUSE OF ACTION FOR BREACH OF CONTRACT**</u>

**A.    Legal Standard Under Fed. R. Civ. P. 8 & 12(b)(6)**

In order to state a claim for relief, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Importantly, Rule 8 does not require "detailed factual allegations," but only that the statements in the complaint make the claimed violation of law "plausible on its face."   *Twombly*,

550 U.S. at 570. This "plausibility" standard is satisfied by a complaint that contains enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556.

To survive a motion to dismiss pursuant to Rule 12(b)(6), the party's pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   And a claim has facial plausibility "when the [party] pleads factual content that allows the Court to draw the reasonable inference that the [other party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B.  The allegations in the complaint for breach of contract are sufficiently pleaded.

Defendant argues that AWT failed to plead facts sufficient to establish the elements of a breach of contract claim because: (1) the Contract was not renewed for 2018 so terminating it mid-year was not a breach, and (2) termination of the Contract was proper because of AWT's non-payment of certain invoices.   Although defendant advances these arguments in support of its pre-answer motion to dismiss, the defendant relies upon extrinsic evidence and seems to be prematurely arguing for summary judgment.

### (1)  The Contract was automatically renewed for 2018.

The complaint alleges the existence of a valid contract entered into between the parties in 2005, that the contract was renewed for each and every year from 2006 through 2018, that the Sales Quota in the contract remained the same and was never increased by the parties, that AWT exceeded the Sales Quota every year, and notwithstanding AWT's satisfying all conditions of the contract, the defendant improperly terminated the contract.   *See* Defendant's Exhibit A, ¶¶ 10-19.

6

Clearly, AWT's allegations meet the very low bar set by F.R.C.P. Rule 8(a)(2) and the corresponding case law as cited above.

Defendant's argument that the Contract was merely an "agreement to agree" and the parties never renewed the Contract is contrary to the unambiguous language of the Contract and contrary to the conduct of the parties from 2005 through at least 2015.

As stated in the Contract, the initial Sales Quota of $55,000 was only <u>subject to increase if the parties jointly agreed</u>.  Because the parties never jointly agreed to an increase in the Sales Quota, the Sales Quota remained $55,000 per year. The parties operated and continued to do business under these terms for eleven (11) years, from 2005 until 2016, when defendant first attempted to terminate the change the Sales Quota unilaterally.

As outlined in the affidavit of AWT's President Matthias Kriesberg, in 2016 and again in 2017, defendant attempted to change the Contract to allow it to unilaterally increase the Sales Quota, and then claim that AWT failed to meet the new Sales Quota.  These attempts by defendant to unilaterally change the terms of the Contract were rejected by AWT and not pursued by Amiad.  Kriesberg Decl. ¶¶ 12, 20-27, 32.

Additionally, defendant's argument that the Contract was never renewed after 2005 is inconsistent with its attempts to unilaterally increase the Sales Quota in 2016 and 2017, and terminate the Contract in 2018.  If no Contract existed past 2006, but only an "agreement to agree," Amiad would have not have (1) claimed that AWT failed to meet a Sales Quota in 2016 and then again in 2017, (2) send an email on a Sunday, a few hours before the close of 2017, proposing a new quota more than twelve times the current one, and thereby acknowledging the terms and obligations of the existing agreement, and (3) serve a termination letter on April 13,

7

2018.  Kriesberg Decl. ¶¶ 20-27, 32.

Contrary to the position taken by defendant, the Contract was not an "agreement to agree" and was never treated that way by the parties.   Unlike the cases cited by defendant in support of its "agreement to agree" argument, there is no missing information in the Contract that renders it vague and unenforceable – the Sales Quota formula is clearly defined.   From 2005 until 2016, both AWT and defendant understood, agreed and worked under the premise that the $55,000 Sales Quota would continue to be the Sales Quota for the following year unless and until both parties agreed on an increase to that number.   Without a joint agreement to increase the Sales Quota, it would remain the same.   Thus, contrary to defendant's contention, an agreement was indeed reached between the parties as to the Sales Quota for 2018 – $55,000 – and there was never any indefiniteness, lack of clarity or missing information to be provided in the future.

> **(2)    The Court should not consider the extrinsic evidence submitted by defendant, but if it does, then defendant's motion must be converted to one for summary judgment and plaintiff must be permitted to take discovery.**

In support of its motion to dismiss, defendant has submitted a declaration from defendant's Director of Finance, Matthew Miles, in which he alleges that AWT failed to pay certain of defendant's invoices.   Defendant's attorney also annexes as an Exhibit the invoices which are alleged to be not paid, as well as correspondence between the parties concerning same.   *See* Defendant's Exhibit B.   The Court should not consider defendants' extrinsic evidence, but if it does, then defendant's motion must be converted to one for summary judgment and plaintiff must be permitted to take discovery.

In adjudicating a motion to dismiss "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken." *Guzman-Reina v. ABCO Maint., Inc.*, 2018 WL 264102, at *2 (E.D.N.Y. Jan. 2, 2018) (internal citations omitted). "A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff relies on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 202-03 (2d Cir. 2002) (citing *CortecIndus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1998)) ("[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original).

Moreover, for extrinsic evidence to be considered, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document [and] that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Therefore, "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *Med-Plus, Inc. v. Am. Cas. Co. of Reading, P.A.*, 2017 WL 3393824, at *5 (E.D.N.Y. Aug. 4, 2017) ("Before ordering such a conversion [to a summary judgment motion], the court should ensure that all parties are given a reasonable opportunity to present all the material that is pertinent to the motion.") (internal quotations omitted); *see also Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012) (declining to convert a motion to dismiss into a motion for summary judgment as discovery was not complete);

*Brodeur v. City of New York*, 2002 WL 424688, at *2 (S.D.N.Y. Mar. 18, 2002) (same).

Here, although plaintiff has attached the Contract to the complaint, plaintiff has not incorporated in or attached defendant's purported invoices or any correspondence between the parties.

Defendant fails to offer any argument that would justify the Court's consideration of defendant's purported invoices or related correspondence.   But even if defendant had offered an argument, "'a district court errs when it considers affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'" *Plains Marketing L.P. v. Kuhn*, 2011 WL 4916687, at *3 (E.D.N.Y. Oct. 17, 2011)(quoting *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000)). Thus, the Court should not consider those documents.

A court "faced with documents outside the pleadings on a Rule 12(b)(6) motion is afforded two options: (1) exclude the extrinsic documents; or (2) convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *McGuire v. City of New York*, 2013 WL 325359, at *5 (E.D.N.Y. Jan. 28, 2013) (citing *Chambers*, 282 F.3d at 153) (collecting cases); *Gomez v. City of New York*, 2017 WL 1034690, at *3 (E.D.N.Y. Mar. 16, 2017) (citing *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 202 (2d Cir. 2006)) ("[W]here matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment."). Indeed, pursuant to Fed. R. Civ. P. 12(d), "the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is enforced and strictly mandatory."

10

*Nakahata*, 723 F.3d at 203 (citing *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154–55 (2d Cir. 2006)).

Here, as previously discussed, there is no reason to consider the extrinsic evidence that defendant submitted as plaintiff has neither incorporated those documents into its complaint nor are they documents of which the Court may take judicial notice because the evidence, "standing alone, does not establish a comprehensive record." *Gomez*, 2017 WL 1034690, at *3. Nevertheless, should the Court convert the instant motion to one for summary judgment, plaintiff must be "given a reasonable opportunity to present all the material that is pertinent to the motion," *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 63 (2d Cir. 2008), which will include, at minimum, the deposition of the defendant.

### (3)   AWT's alleged non-payment of certain invoices does not serve as a basis for dismissal of the Complaint.

Defendant argues that the invoices together with the Contract formed the "contractual relationship" of the parties.   However, the Contract does not contain any payment terms and the invoices and the payment terms contained therein were never negotiated between the parties and were unilaterally created by Amiad.   The invoices and their terms were also never agreed to nor complied with by AWT for the entire thirteen year relationship between AWT and defendant.   In addition, until 2017, defendant never attempted to enforce the terms of its invoices.   *See* Kriesberg Decl. ¶ 30.

It is clear that although defendant purportedly based its April 13, 2018 termination of the Contract on AWT's alleged nonpayment of invoices, the real reason for defendant's termination of the Contract is that it no longer wanted to do business with AWT pursuant to the Contract; the stated reason of nonpayment of invoices was and still is a pretext.

11

Additional evidence that defendant's termination of the Contract based upon AWT's failure to make timely payments is a ploy is that AWT attempted to remit the balance due, but defendant rejected the payment claiming that it was $685.64 less than the amount that was actually due. Of course any discrepancies in the correct balance amount could have been worked out between the parties, but defendant was only interested in getting out from a Contract it no longer wanted.   Kriesberg Decl. ¶ 32.

Lastly, the parties' course of dealing evidences that AWT was not in breach of the Contract. Since 2005, defendant has held balances due for products purchased by AWT in much larger amounts and for much longer periods of time than the $18,085.27 balance Amiad alleges is owed.   On average, AWT's running monthly balance was approximately $100,000, and was as high as $267,000.   The $18,000 balance in April 2018 was near the lowest balance amount in three years.   AWT's payments to Amiad in 2018 and balances were consistent with the parties' course of dealing over the past 13 years and consistent with the norms in the construction industry. Kriesberg Decl. ¶ 31.

## POINT II

### THE COMPLAINT SHOULD NOT BE DISMISSED PURSUANT TO THE FIRST-FILED RULE

**A.    This Court should defer to the District Court for the Middle District of North Carolina on the issue of proper venue.**

Defendant commenced a declaratory judgment action in the Superior Court of Guilford County, North Carolina on May 17, 2018.   AWT commenced this breach of contract action on June 18, 2018, and removed Amiad's North Carolina state court action to the United States District Court for the Middle District of North Carolina on June 19, 2018.

12

Although the Second Circuit has not addressed this issue, for determining which of two competing lawsuits has priority, it appears that Judges in this District follow the rule that the date on which suit was originally filed in state court, not day on which suit was removed to federal district court, is to be used in determining which of two competing lawsuits had been first filed. *See e.g.*, *Clarendon National Ins. Co. v. Pascual* 2000 WL 270862 (S.D.N.Y. 2000); *800–Flowers, Inc. v. Intercontinental Florest, Inc.*, 860 F.Supp. 128, 131 (S.D.N.Y. 1994); *Manufactures Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161 (S.D.N.Y. 1992).

Additionally, Judges in the Southern District have generally adhered to the principle that the court before which the first-filed action was brought should decide whether the first-filed presumption or an exception applies. *Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC*, 2018 WL 357304 (S.D.N.Y. 2018); *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 510 (S.D.N.Y. 2004); *800–Flowers, Inc. v. Intercontinental Florest, Inc.*, 860 F.Supp. 128, 131 (S.D.N.Y. 1994). This decision rule is concerned with avoiding "the possibility of inconsistent rulings on discretionary matters as well as duplication of judicial effort." *Donaldson, Lufkin & Jenrette, Inc. v. L.A. Cty.*, 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982).

If this Court considers the first-filed case to be the action filed by Amiad in the Superior Court of Guilford County, North Carolina, which was then removed to the Middle District of North Carolina, this Court should defer to that District Court to decide the issue of venue and stay this action pending that determination.

**B.   Venue of this action is proper in the Southern District of New York.**

In the event that this Court determines that it is up to this District Court to decide the venue motion then it should find that venue is proper in the Southern District of New York.

"The suit which is first filed should have priority, 'absent a showing of a balance of convenience or special circumstances giving priority to the second suit.'" *800–Flowers, Inc. v. Intercontinental Florest, Inc.*, 860 F.Supp. 128, 131 (S.D.N.Y. 1994).

Although there is a "strong presumption" in favor of the first-filed suit (*Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001)), this presumption is not to be applied rigidly or mechanically simply based on the dates the actions were filed. *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 392 (S.D.N.Y. 2014); *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.,* 522 F.3d 271, 275 (2d Cir. 2008) (explaining that the "first-filed rule" is not an "invariable mandate," but a rebuttable presumption).

It is well established that district courts need not slavishly adhere to the first filed rule, and that where circumstances dictate, "great significance should not be placed upon the dates the actions were filed." *Ivy–Mar,* 1993 WL 535166 at *2, 1993 U.S.Dist. LEXIS 17965 at *6. "The courts should be concerned with what the interests of justice require and not with who won the race." *National Patent Dev. Corp. v. American Hosp. Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984). *Berisford Capital Corp. v. Cent. States, Se. & Sw. Areas Pension Fund,* 677 F.Supp. 220, 222 (S.D.N.Y.1988)("the first-filed rule does not constitute an invariable mandate. The inquiry still requires selection of the more appropriate forum, since the first-filed rule is only a "'presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action.").

**(1)    Special circumstances dictate that venue is proper in the Southern District of New York.**

The Second Circuit has recognized that the first-filed presumption is inapplicable if: (1) special circumstances justify giving priority to the second action; or (2) if the balance of

14

convenience weighs in favor of the second action.   *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

Special circumstances exist when the first-filed suit is an improper anticipatory filing.   *Ontel Prods. V. Project Strategy Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995).   An improper anticipatory filing is one "made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different federal district." *Ontel Prods.*, 899 F. Supp. at 1150. *Citigroup, Inc., v. City Holding Company,* 97 F.Supp.2d 549, 555–556 (S.D.N.Y.2000)("An improper anticipatory filing is 'one made under the apparent threat of a presumed adversary filing the mirror image of that suit' in another court.").   A declaratory judgment action is anticipatory if it is filed in response to a direct threat of litigation.   *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271 (2d Cir. 2008).

In the instant case, Amiad commenced the North Carolina state court declaratory judgment action merely **16 day**s after AWT's counsel threatened to "pursue legal action" if the parties could not resolve their dispute.   Amiad's state court action was clearly anticipatory and in response to AWT' threat of litigation and therefore should not be given preference for venue.   *National Union Fire Ins. Co. v. International Wire Group, Inc.,* 02 Civ. 10338, 2003 WL 21277114 at *6 (S.D.N.Y. June 2, 2003) (first filed suit dismissed as "anticipatory" where brought after receipt of letter clearly announcing other party's intention to bring suit in Texas); *Chicago Ins. Co. v. Holzer,* 00 Civ. 1062, 2000 WL 777907 at *1, 4 (S.D.N.Y. June 16, 2000) (specific warning requirement was met by letter stating that if recipient's decision " 'remains unaltered, we will commence suit in a court of appropriate jurisdiction in forty eight (48) hours' "); *Mondo, Inc. v. Spitz,* 97 Civ. 4822, 1998 WL 17744 at *1–2 (S.D.N.Y. Jan. 16, 1998) (Declaratory judgment

action filed after receipt of a letter stating the sender's "intention to file suit in California if settlement negotiations were not fruitful" was anticipatory filing.); *Federal Ins. Co. v. May Dep't Stores Co.,* 808 F.Supp. 347, 350 (S.D.N.Y.1992) (Declaratory judgment action found to be anticipatory when filed after receipt of letter stating that if sender's claim was not satisfied by a specific date, defendant would sue.); *J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. 486, 491 (S.D.N.Y.1995) ("When a notice letter informs a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit, the courts have found, in the exercise of discretion, in favor of the second-filed action.").

Finally, an anticipatory filing is "improper" when it "attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose." *Ontel Prods.*, 899 F.Supp. at 1150. *See also Toy Biz, Inc. v. Centuri Corp.*, 990 F.Supp. 328, 332 (S.D.N.Y.1998)(Forum shopping justifies an exception to the first-filed rule "where a suit bears only a slight connection to the [forum]."). AWT is a New York corporation and the service territory which is the subject of the disputed contract is New York City, as well as Nassau and Suffolk counties. Amiad is a California corporation that moved its main office to North Carolina several years after the Contract was signed. Accordingly, AWT has no connection to the Middle District of North Carolina.

**(2)   The balance of convenience weighs in favor of venue in the Southern District of New York.**

If the Court finds that there are no special circumstances justifying an exception to the first-filed rule, this Court may still depart from the rule if the balance of convenience warrants transfer of the case to the forum where the second suit was filed. *Citigroup, Inc., v. City Holding Company,* 97 F.Supp.2d 549, 560 (S.D.N.Y.2000).

16

The balancing of convenience "should be left to the sound discretion of the district courts." *William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969). Weighing the balance of convenience under the first-filed rule involves consideration of the same factors that apply to the determination of whether transfer is appropriate under 28 U.S.C. § 1404(a). *S–Fer International, Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211, 216 (S.D.N.Y. 1995).

Section 1404(a) provides that a district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Under a section 1404(a) analysis, courts determine motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

The factors relevant to the balance of convenience analysis, which are essentially the same as those considered in connection with motions to transfer venue, are:   (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.  *Employers Insurance of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271 (2d Cir. 2008).

### (A)   The Plaintiff's Choice of Forum

As illustrated above, Amiad's choice of forum was clearly forum shopping as it was a race to the courthouse steps merely 16 days after AWT threatened litigation.   Furthermore, Amiad

brought this suit within a district that does not have any connection with the case: none of the parties reside here, neither party's performance took place here, and none of the evidence or witnesses are likely to be found here.

### (B)   The Convenience of Witnesses and Location of Documents

There are no known witnesses or evidence in the Middle District of North Carolina, and AWT's records and potential witnesses are all located in the Southern District of New York.   To the extent out-of-state witnesses would have to travel for this case, New York City's larger international airports and robust flight schedules make access to that forum more convenient. Furthermore, the international reach of Amiad's business operations weighs in favor of requiring its witnesses to travel to New York instead of requiring AWT, which operates only locally, to send its witnesses to North Carolina.

### (C)   The Locus of Operative Facts

AWT's service territory, in which AWT performed under the Contract, is New York City, as well as Nassau and Suffolk counties. AWT is not registered to do business in North Carolina, does not have offices in North Carolina, does not own any property in North Carolina, does not have any offices, employees or agents in North Carolina, and does not engage in its business of installing and maintaining water filters in North Carolina.   The parties anticipated that AWT and Amiad would perform their obligations under the Agreement in New York and California, respectively, not North Carolina.   In short, none of the operative facts in this case occurred in the Middle District of North Carolina.

18

### (D)   The Relative Means of the Parties

Amiad's website reveals that is a world-wide corporation that conducts business in North America, Israel, Spain & Latin America, China, India, Russia, France and Germany.   AWT is a privately held corporation with one shareholder that does business in the New York Metropolitan area.

In sum, the Court should transfer this case because the convenience of the parties and witnesses favors the Southern District of New York, over the Middle District of North Carolina, which has no connection with the case at all.

### Conclusion

For the foregoing reasons, the plaintiff respectfully requests that the Court deny defendant's motion to dismiss the complaint.

Dated: New York, NY
        November 5, 2018

RONALD FRANCIS, ESQ.

By: *Ronald Francis*
        Ronald Francis [RF-8939]
        Attorney for Plaintiff
        30 Broad Street, 37th Floor
        New York, NY 10004
        (212) 279-6536
        rf@ronaldfrancislaw.com

19