UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

| | | |
|---|---|---|
| ADVANCED WATER TECHNOLOGIES INC., | : | Case No. 1:18-cv-05473-VSB |
| | : | |
| Plaintiff, | : | **ANSWER WITH** |
| | : | **COUNTERCLAIMS** |
| -against- | : | |
| | : | |
| AMIAD U.S.A., INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

----------------------------------------------------------------x

Defendant Amiad U.S.A., Inc. ("Amiad"), by and through its attorneys, Bryan Cave Leighton Paisner LLP, as and for its answer to the Complaint filed by Advanced Water Technologies Inc., ("AWT"), states as follows:

1. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2. Admits the allegations contained in Paragraph 2 of the Complaint.

3. Denies the allegations contained in Paragraph 3 of the Complaint.

4. Paragraph 4 of the Complaint sets forth a legal conclusion to which no response is required; however, to the extent that a response is required, Amiad denies those allegations.

5. Paragraph 5 of the Complaint sets forth a legal conclusion to which no response is required; however, to the extent a response is required, Defendant denies those allegations and avers that a related matter between the parties, styled *Amiad U.S.A., Inc. v. Advanced Water Technologies, Inc.*, which was filed in the General Court of Justice of North Carolina, Superior Court Division, Guilford County, and subsequently removed by AWT to United States District Court for the Middle District of North Carolina, was dismissed for lack of personal jurisdiction and accordingly this matter was permitted to proceed.

6. Denies the allegations contained in Paragraph 6 of the Complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9. Admits the allegations contained in Paragraph 9 of the Complaint.

10. Denies the allegations contained in Paragraph 10 of the Complaint, except admits that AWT and Amiad entered into an agreement dated March 31, 2005 ("2005 Agreement"), and refers the Court to the copy of the 2005 Agreement attached as Exhibit A to the Complaint for a full and complete statement of its terms.

11. Denies the allegations contained in Paragraph 11 of the Complaint, and refers to the copy of the 2005 Agreement attached as Exhibit A to the Complaint for a full and complete statement of its terms.

12. With respect to Paragraph 12 of the Complaint, Amiad admits that the 2005 Agreement states that "If AWT meets the quota, it has an automatic right of renewal, subject to continued creditworthiness, continuing and responsible efforts to sell Amiad filtration, and responsible maintenance of the equipment it has sold[,]" and refers the Court to the copy of the 2005 Agreement attached as Exhibit A to the Complaint for a full and complete statement of its terms.

13. Admits the allegations contained in Paragraph 13 of the Complaint, and refers to the Court to that copy of the 2005 Agreement attached as Exhibit A to the Complaint for a full and complete statement of its terms.

14.     Admits the allegations contained in Paragraph 14 of the Complaint accurately quote the referenced text and refers the Court to the copy of the 2005 Agreement attached as Exhibit A to the Complaint for a full and complete statement of its terms.

15.     Denies the allegations contained in Paragraph 15 of the Complaint, except admits that the sales quota for the 2005 fiscal year running from January 1, 2005, through December 31, 2005 was $55,000, and the AWT refused to negotiate or agree to any reasonable increase in the annual sales quota required as a condition precedent to any right of automatic renewal.

16.     Denies the allegations contained in Paragraph 16 of the Complaint, except admits that AWT has purchased varying amounts of goods over the years.

17.     Denies the allegations contained in Paragraph 17 of the Complaint, except admits that AWT purchased varying amounts of goods over the years.

18.     Denies the allegations contained in Paragraph 18 of the Complaint.

19.     Admits the allegations contained in Paragraph 19 of the Complaint accurately quotes the referenced text and refers the Court to AWT's letter dated April 13, 2018, for a full and complete statement of its contents.

20.     Denies the allegations contained in Paragraph 20 of the Complaint, except admits that by letter dated May 1, 2018, AWT attempted to reject Amiad's termination of the 2005 Agreement and refers the Court to the May 1, 2018 letter for a full and complete statement of its contents.

21.     Denies the allegations contained in Paragraph 21 of the Complaint, except admits that enclosed with the May 1, 2018 letter from AWT to Amiad was a check payable to Amiad in the amount of $17,399.63.

601169755

22. Denies the allegations contained in Paragraph 22 of the Complaint, except admits and that Amiad did not cash the check payable to it in the amount of $17,399.63, which was enclosed by AWT with its May 1, 2018 letter to Amiad.

23. Denies the allegations contained in Paragraph 23 of the Complaint.

### CLAIM FOR RELIEF AGAINST DEFENDANT
### (Breach of Contract)

24. Denies the allegations contained in Paragraph 24 of the Complaint.

25. Denies the allegations contained in Paragraph 25 of the Complaint.

26. Denies the allegations contained in Paragraph 26 of the Complaint.

27. Denies the allegations contained in Paragraph 27 of the Complaint.

28. Denies the allegations contained in Paragraph 28 of the Complaint.

### AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

29. Plaintiff materially breached the 2005 Agreement by failing to comply with its obligations under the agreement to pay overdue invoices totaling $18,085.27.

30. Accordingly, having materially breached the 2005 Agreement, AWT cannot prevail on its breach of contract claim against Amiad.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

31. Amiad and AWT's obligation to jointly agree to a sales quota in purchasing volume was a condition precedent to the automatic annual renewal of the 2005 Agreement, and Amiad and AMT failed to jointly agree to a sales quota for the 2017 fiscal year.

32. Any automatic right to renewal was also "subject to continued creditworthiness, continuing and responsible efforts to sell Amiad filtration, and responsible maintenance of equipment it has sold."

33. AWT did not have the right to bind Amiad to an exclusive distribution arrangement in perpetuity simply by meeting the 2005 quota year after year and rejecting Amiad's attempts to negotiate the raising of that quota.

34. AWT repeatedly rejected Amiad's attempts to agree on a reasonable annual increase.

35. AWT's actions were arbitrary, in bad faith, and in breach of the express covenants and agreements and the implied covenant of good faith and fair dealing in the parties agreement.

36. AWT also did not meet the other criteria set forth with regard to automatic renewal, including continued creditworthiness.

37. Accordingly, AWT cannot allege that there was an automatic right of renewal or correspondingly a breach of contract by Amiad.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

38. AWT has failed to allege an entitlement to damages, and even assuming AWT suffered damages, such damages are not recoverable.

39. To the extent that AWT seeks to recover lost profit damages for an unspecified period, such a claim is speculative and not within the contemplation of the parties.

40. Amiad and AWT did not contract to do business in perpetuity, and Amiad did not guarantee any minimum profit or sale.

41. AWT's alleged damages were not within the contemplation of the parties at the time that the 2005 Agreement was made, and AWT's alleged loss is not capable of proof with reasonable certainty.

42. To the extent any lost profit damages are recoverable, they are capped at any profit earned on the sale of $55,000 of product and no more.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

43. The Court lacks subject matter jurisdiction over this Action because the amount in controversy in this matter does not meet the $75,000 threshold set forth in 28 U.S.C. § 1332.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

44. The renewal provision in the 2005 Agreement is unconscionable and legally insufficient, vague, and indefinite to create an automatic right of renewal in perpetuity at the sales level set for the first year.

## COUNTERCLAIMS

## FACTS

**No Automatic Right of Renewal**

1. On or about March 31, 2005, Amiad and AWT entered into the 2005 Agreement.

2. In the 2005 Agreement, the parties agreed that, for fiscal year 2005, AWT would be Amiad's exclusive distributer of certain water filtration products for the territory of New York City (the five boroughs), Nassau County and Suffolk County.

3. In the 2005 Agreement, the parties agreed:

**Quota**: AWT must purchase an agreed $ volume from Amiad on an annual basis; if AWT does not do so, Amiad may elect to continue or discontinue the exclusive nature of the distribution agreement. The annual increase in sales/quota should be a reasonable number and will be jointly agreed between Amiad and AWT. If AWT meets the quota, it has an automatic right to renewal, subject to continued creditworthiness, continuing and responsible efforts to sell Amiad filtration, and responsible maintenance of equipment it has sold. The sales quota / target for NET purchases of Amiad products is US $55,000 in FY 2005 (i.e. January 1 – December 31, 2005). (emphasis in the original.)

4. Accordingly, AWT would have an automatic right of renewal only if the following conditions were met: (i) "AWT must purchase an agreed $ volume from Amiad on an annual basis;" (ii) "[t]he annual increase in sales/quota should be a reasonable number and will be jointly agreed between Amiad and AWT;" and (iii) AWT will be "subject to continued

creditworthiness, continuing responsible efforts to sell Amiad filtration, and responsible maintenance of the equipment it sold."

5. AWT repeatedly rejected Amiad's attempts to agree on a reasonable annual increase in sales quota.

6. In 2015, 2016, and 2017, AWT refused to negotiate or agree to a reasonable increase in annual sales quota for the 2016, 2017, and 2018 fiscal years.

7. By contrast, Amiad offered to negotiate and agree to a reasonable increase in the annual sales quota for the subsequent fiscal years.

8. Amiad, therefore, had no right to an automatic renewal of the 2005 Agreement.

9. AWT's failure to jointly agree to a reasonably increase in the next year's sales quota gave Amiad with the right to refuse to renew the 2005 Agreement and discontinue the exclusive nature of the distribution agreement.

10. AWT's lack of creditworthiness permitted Amiad to refuse to renew the 2005 Agreement and discontinue the exclusive nature of the distribution agreement.

**AWT's Lack of Creditworthiness and Failure to Pay Timely Amounts Due**

11. AWT submitted purchase orders for water filtration products to Amiad, and Amiad fulfilled the purchase orders. Upon fulfillment, Amiad submitted invoices to AWT to receive payment for the products provided to AWT pursuant to its purchase orders. The invoices instructed payment to be made within 30 days of the date of the invoice and stated that "Terms and Conditions Apply."

12. AWT was regularly late in its payments, raising significant concerns about its creditworthiness.

13. AWT paid its invoices consistently late, raising issues with its creditworthiness, in 2015 through 2018.

14. For example, between June 2017 to February 2018, AWT failed to timely pay several invoices ("Past Due Invoices"), even though Amiad had fulfilled the corresponding purchase orders ("Purchase Orders").

15. Amiad's terms and conditions ("Terms and Conditions") apply to "all transactions contemplated by the quote or contract of which the[] terms and conditions form a part."

16. The Terms and Conditions further provide that the Past Due Invoices along with the Terms and Conditions, "constitutes the entire agreement of Seller and Purchaser with respect to the Products, and all prior or contemporaneous agreements of the Purchaser and the Seller with respect to such Products are hereby merged."

17. Amiad made numerous demands for payment of the Past Due Invoices.

18. On November 21, 2017, Sandi Thompson, Amiad's Accounts Receivable Specialist, sent an email to Matt Kaye, of AWT, stating "Currently, this account is showing $21,314.13 past due.  Please review the attached current statement and advise when we can expect our next payment."

19. On December 11, 2017, Ms. Thompson sent a follow-up email to Mr. Kaye stating "Your account is still showing $21,314.13 past due.  Please review the attached statement and advise when we can expect our next payment."

20. On January 3, 2018, Ms. Thomson sent another follow-up email to Mr. Kaye stating "REMINDER! ... Please advise when we can expect the next payment."

601169755

21. On January 11, 2018, Ms. Thomson sent another follow-up email to Mr. Kaye stating "We have not heard anything from you. The last payment we received was in October of last year. Please review the attached statement and advise when we can expect payment."

22. On January 29, 2018, Ms. Thomson sent another follow-up email to Mr. Kaye stating "Any update on when we can expect payment?"

23. On February 27, 2018, Ms. Thomson sent another follow-up email to Mr. Kaye stating "REMINDER! ... To date we still have not received payment for the past due invoices. Please review the attached statement and advise when we can expect payment."

24. On February 27, 2018, Mr. Kaye responded "Understood, payments will start to come before too much longer, much appreciated."

25. On March 14, 2018, Matthew Miles, Amiad's Director of Finance/Controller, sent an email to Mr. Kaye stating "We need to start receiving payments. You owe over $21k with the oldest invoice dating back to August. If payment isn't received by [end of the month] I will have to pursue other options."

26. On March 15, 2018, Mr. Kaye sent Mr. Miles an email stating "We are coming out of a rough few months but revenue is starting to come in now, we'll start paying down from the oldest first and catch up with all. Not sure if we can get to zero by the end of this month, but substantially there in any case. First payment(s) early next week...."

27. Following the parties conversations between November 2017 and March 15, 2018, on or about March 26, 2018, AWT paid Amiad just $6,664.68. At that point, AWT was at least seven months overdue on the oldest of the Past Due Invoices.

28. On April 13, 2018, Michael Poth, Amiad's President sent AWT a letter, immediately terminating the 2005 Agreement based on AWT's failure to timely pay invoices, which was a fundamental obligation under the parties' contractual agreements.

29. AWT's failure to timely pay amounts owed to Amiad was a material breach of the parties' contract, entitling Amiad to cancel the contract.

30. On or about May 1, 2018, attorney Kristin Rosenblum, of the New York law firm Buhler, Duggal & Henry LLP, sent Mr. Poth a letter, on behalf of AWT, attempting to reject Amiad's termination of the parties' contractual relationship.

31. To date, AWT still owes Amiad the amount of $18,085.27, plus interest.

32. Under the 2005 Agreement, any automatic right to renewal was "subject to continued creditworthiness, continuing and responsible efforts to sell Amiad filtration, and responsible maintenance of equipment it has sold."

33. AWT failed to maintain creditworthiness when it failed to pay the Past Due Invoices, even though Amiad made repeated demands for payment of the Past Due Invoices.

34. AWT's lack of creditworthiness permitted Amiad to refuse to renew the 2005 Agreement and discontinue the exclusive nature of the distribution agreement.

35. AWT also did not have a right to renew unless it demonstrated "continuing and responsible efforts to sell Amiad filtration" products. AWT's refusal to agree to reasonable increases in its sales quota and failure to consistently increase the sales of goods, as well as marked decrease in the sale of goods, prevented AWT from claiming a right to renew.

## FIRST COUNTERCLAIM
**(Declaratory Judgment pursuant to 28 U.S.C. § 2201)**

36. Amiad repeats and realleges the allegations contained in Paragraphs 1 through 35 of the Counterclaims as fully set forth herein.

37. An actual or justiciable case or controversy exists as to whether Amiad properly terminated the 2005 Agreement, affecting the rights of Amiad and AWT under the agreement to exclusively purchase and sell Amiad's water filtration products.

38. This Court has jurisdiction under 28 U.S.C. § 2201 to assess the rights of AWT and Amiad under the 2005 Agreement.

39. Pursuant to the 2005 Agreement, the automatic right to renewal was subject to an annual increase in sales quota which was to be "jointly agreed between Amiad and AWT."

40. AWT refused to negotiate or agree to any reasonable increase in annual sales quota in, among other years, 2015, 2016, and 2017, and therefore had no right to an automatic renewal of the 2005 Agreement.

41. AWT's failure to jointly agree to the annual sales quota increase for the subsequent fiscal year provided Amiad with the right to "discontinue the exclusive nature of the distribution agreement."

42. Because AWT failed to negotiate or agree to any reasonable increase in the annual sales quota for the subsequent fiscal year, Amiad had a right not to renew and to terminate the 2005 Agreement.

43. Under the 2005 Agreement, the automatic right to renewal was also "subject to continued creditworthiness, continuing and responsible efforts to sell Amiad filtration, and responsible maintenance of equipment it has sold."

44. AWT failed to maintain creditworthiness when it did not pay Past Due Invoices, even though Amiad made repeated demands for payment of the Past Due Invoices.

45. Because AWT was no longer creditworthy due to its failure to pay the Past Due Invoices, Amiad had a right not to renew and to terminate the 2005 Agreement.

46. AWT's lack of creditworthiness permitted and permits Amiad to refuse to renew the 2005 Agreement and discontinue the exclusive nature of the distribution agreement.

47. AWT also did not have a right to renew unless it demonstrated "continuing and responsible efforts to sell Amiad filtration" products. AWT's refusal to agree to reasonable increases in its sales quota and failure to consistently increase the sales of goods, as well as marked decrease in the sale of goods, prevented AWT from claiming a right to renew.

48. Amiad does not have an adequate alternative remedy for AWT's failure to agree to any reasonable increase of the annual sales quota, for AWT's failure to maintain creditworthiness or for its failure to demonstrate "continuing and responsible efforts to sell Amiad filtration."

49. Accordingly, Amiad seeks an Order declaring that it properly terminated the 2005 Agreement.

**SECOND COUNTERCLAIM**
**(Breach of Contract)**

50. Amiad repeats and realleges the allegations contained in Paragraphs 1 through 49 of the Counterclaims as fully set forth herein.

51. AWT and Amiad were parties to the 2005 Agreement.

52. Pursuant to the 2005 Agreement, AWT agreed to be Amiad's exclusive distributor of certain water filtration products for New York City, Nassau, and Suffolk Counties.

- 13 -

53. In accordance with its role as exclusive distributor under the 2005 Agreement, AWT purchased certain water filtration products from Amiad pursuant to the Purchase Orders that AWT issued to Amiad.

54. In accordance with the 2005 Agreement and the amounts requested pursuant to AWT's Purchase Orders, Amiad supplied products to AWT and issued invoices to AWT for the amounts due for those products.

55. Between June 2017 to February 2018, AWT failed to timely pay Past Due Invoices issued by Amiad to AWT, even though Amiad had fulfilled the Purchase Orders issued by AWT to Amiad.

56. AWT's failure to pay the Past Due Invoices constitutes a material breach of the 2005 Agreement and the Past Due Invoices.

57. AWT's material breach of the 2005 Agreement and the Past Due Invoices entitled Amiad to terminate the 2005 Agreement and any contractual relationship that Amiad had with AWT.

58. As a result of AWT's material breach of the 2005 Agreement and its contractual relationship with Amiad, Amiad has been damaged in the amount of $18,085.27, plus interest.

**THIRD COUNTERCLAIM**
**(Goods Sold and Delivered, In the Alternative to Breach of Contract)**

59. Amiad repeats and realleges the allegations contained in Paragraphs 1 through 58 of the Counterclaims as fully set forth herein.

60. Amiad sold and delivered AWT water filtration products at AWT's request, pursuant to the Purchase Orders submitted by AWT between June 2017 and February 2018.

61. Amiad issued invoices to AWT for the water filtration products that it purchased pursuant to the Purchase Orders submitted by AWT to Amiad between June 2017 and February 2018.

62. AWT has an obligation to pay for the water filtration products that it ordered and received from Amiad.

63. AWT breached its obligation to pay for the water filtration products that it ordered and received from Amiad and is indebted to Amiad in the amount of $18,085.27 plus interest.

64. AWT has failed to pay $18,085.27 on the Past Due Invoices, even though they have been due, and Amiad has made numerous attempts to collect payment for over seven months before terminating the 2005 Agreement.

65. AWT cannot withhold payment from Amiad from the goods sold and delivered in accordance with AWT's Purchase Orders to Amiad and the associated Past Due Invoices.

66. AWT owes Amiad $18,085.27, plus interest, for the failure to pay Amiad on goods sold and delivered pursuant to the Purchase Orders.

**WHEREFORE**, having fully answered and responded to the allegations of the Complaint and having asserted Counterclaims in this Action, Amiad respectfully requests that:

(a) AWT's claims be dismissed in their entirety with prejudice;

(b) the Court issue an Order declaring that Amiad properly cancelled the 2005 Agreement and discontinude the exclusive nature of the distribution agreement, and that AWT had no right to renew the 2005 Agreement;

(c) Amiad be granted all of the relief sought in its Counterclaim for breach of contract, or in the alternative for goods sold and received, and judgment be entered

against AWT and in favor of Amiad in the amount of 18,085.27, plus interest and costs as permitted by law; and

(d)     Amiad be granted such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 31, 2019

                                        **BRYAN CAVE LEIGHTON PAISNER LLP**

                                        By:    /s/ Noah M. Weissman_____
                                             Noah M. Weissman
                                             Courtney J. Peterson
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        (212) 541-2000
                                        *Attorneys for Defendant Amiad U.S.A., Inc.*